UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                           :

MICHAEL DUNSTON,                    :      **MEMORANDUM**

                                       :      **DECISION AND ORDER**

                       Petitioner,      :

                                       :      16-cv-821(BMC)

          - against -           :

                                       :

THOMAS GRIFFIN,                  :

                                       :

                     Respondent.
-------------------------------------------------------- X

**COGAN**, District Judge.

Petitioner seeks habeas corpus relief under 28 U.S.C. § 2254(d) to vacate his state court conviction on two counts of second degree weapons possession, and one count each of first degree reckless endangerment, third degree weapons possession, and fourth degree weapons possession. He was sentenced as a persistent violent felony offender to concurrent terms totaling twenty years to life. Relevant facts as to each of petitioner's points of error will be set forth below, but to summarize, after getting into a fight at a party, petitioner and his brother returned with guns and started firing "wildly", causing people in the area to scatter and hide. No one was shot but at least two cars in the area were damaged. There may have been a third shooter involved with whom petitioner and his brother were exchanging fire.

Petitioner's points of error are either not cognizable on federal habeas corpus review; procedurally barred; or without merit, and the petition is therefore denied. The points of error are as follows.

## I. Hearsay/Confrontation Clause Claim

### A. Background

At petitioner's trial, one of the prosecution's witnesses was a woman named Evlina Cox. She testified that she was awoken when she heard gunfire. From her window, she saw people diving for cover. She went out of her house to the sidewalk, and testified: "Somebody said to me, your car is shot up." Defense counsel objected on hearsay grounds. The trial court overruled the objection, and instructed the jury that the statement was not being offered to prove its truth but to show Cox's state of mind.

Cox then testified that, having heard this from the unidentified declarant, she walked over to her car, which was parked on the street, and saw a bullet hole in the windshield that had struck and dislodged the rearview mirror. She owned another car parked on the street and, upon inspection, she saw that it had bullet holes in the hood and passenger door. She asked a group of people standing around who had shot up her cars. She then testified, without objection: "Everybody was standing around looking. They pointed to [petitioner]." Cox and her husband had known petitioner as a neighbor for approximately 15 years. When Cox asked petitioner why he had shot up her cars, petitioner apologized, asked her not to call the police, and said he would pay for the repairs.

On direct appeal, petitioner argued that allowing Cox to testify as to the statements she attributed to unnamed people violated both the rule against hearsay and his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. The Appellate Division held that "while the trial court erred in admitting certain hearsay testimony, such error was . . . harmless." People v. Dunston, 100 A.D.3d 769, 770, 953 N.Y.S.2d 660, 662 (2d Dep't 2012), leave to app. denied, 20 N.Y.3d 1098, 965 N.Y.S.2d 794 (2013) (table).

## B. Analysis

At the outset, I must determine the proper standard of review of the Appellate Division's decision on this point. Notably, petitioner's trial counsel never objected to Cox's testimony on the basis of the Confrontation Clause. Even as to the hearsay objection, she only objected to Cox's first remark – "Somebody said to me, your car is shot up." There was no objection at all to Cox's testimony that "the group" had pointed to petitioner, even though on direct appeal, appellate counsel challenged that testimony under both the hearsay rule and Confrontation Clause.

The Appellate Division thus might well have disposed of the Confrontation Clause claim, and all claims relating to the "group" having identified petitioner, as unpreserved. See Davis v. Lee, No. 13-cv-3827, 2015 WL 1379024, at *5 (S.D.N.Y. Mar. 25, 2015) ("[I]t is well-settled law in New York that the invocation of a hearsay objection is insufficient to preserve a Confrontation Clause violation.") (quoting Bryant v. Lempke, No. 08 Civ. 6103, 2010 WL 3063073, at *5 (W.D.N.Y. Aug. 2, 2010); cf. United States v. Dukagjini, 326 F.3d 45, 60 (2d Cir. 2003) ("[A] defendant's claim that he was deprived of a fair trial because of the admission in evidence of a statement objectionable as hearsay would not put the court on notice that the defendant claimed a violation of his constitutional right to be confronted by his accusers.") (quoting Daye v. Attorney Gen. of New York, 696 F.2d 186, 193 (2d Cir. 1982) (en banc)). However, because the Appellate Division did not reject the claim as procedurally barred under state law, I will not either. See Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S. Ct. 2633, 2638 (1985) (for a federal court to invoke a state procedural bar, "[t]he state court must actually have relied on the procedural bar as an independent basis for its disposition of the case."); Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir.1992).

That does not end the matter, however, because the Appellate Division's holding that it was error to admit these two portions of Cox's testimony, albeit harmless error, is hard to fathom.  As to the first statement from an unidentified person – that someone had shot up her car – that statement was clearly not offered to prove that somebody had shot Cox's car.  The prosecutor had plenty of evidence as to the truth of that matter, since Cox testified to the bullet holes and damage caused to her car by what the jury found was petitioner's shooting.  Rather, the statement explained why Cox went over to her car and found the damage in the first place.  The jury would not have had any context if Cox, who previously testified that she went outside when she heard the gunfire to check on her kids, had then inexplicably testified that she then went over to her car to see if it had been shot.  Why would she have gone to her car? She went to her car because somebody told her that her car had been shot.  The trial court therefore appears to have properly overruled the objection, and gave the appropriate limiting instruction that the statement was not being offered for its truth, but to show Cox's reason for going to inspect her car.   I don't see a hearsay issue, let alone a Confrontation Clause issue.

As to the "statement" that was not objected to at all – that "the group" had pointed out petitioner to Cox as the shooter – that again was not offered to prove that petitioner was the shooter.  It was to explain why Cox had confronted petitioner in the street and asked him why he shot her car.  That question was the predicate for petitioner's admission that it was he who fired the shots that hit her car and his request to Cox that she not report him to the police; petitioner's admission was not objected to at trial or on appeal.  Again, it would have made no sense for Cox to testify that she confronted petitioner for no reason at all and that petitioner then admitted the crime.  Cox's testimony that the group had pointed out petitioner was the explanation for the confrontation which led to petitioner's admission.

It is therefore hard to understand why the Appellate Division labeled either of these statements as inadmissible, albeit harmless, hearsay. The Appellate Division may have been imprecisely saying that even assuming *arguendo* that the statements were improperly admitted hearsay, the error was harmless. But once again, my role on a petition for a writ of habeas corpus is to review the Appellate Division's decision for what it held, not for what it should have held or to correct errors that it made in petitioner's favor. I will therefore consider whether the "error" was harmless.

Because of this background, however, it is practically impossible to find that the Appellate Division committed constitutional error when it held that the admission of these statements was harmless. The standard of reviewing state court harmless error rulings on federal habeas corpus is set forth in <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722 (1993), which requires a federal court to overturn a State conviction only when the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." The Second Circuit, in directing district courts in the application of this standard, weighs "the overall importance of the wrongly admitted evidence, and the overall strength of the prosecution's case." <u>Wood v. Ercole</u>, 644 F.3d 83, 94 (2d Cir. 2011) (internal quotation marks, brackets, and ellipsis omitted). The "importance" factor in the equation is "determined by the prosecutor's conduct with respect to the evidence, whether the evidence bore on an issue plainly critical to the jury's decision, and whether it was material to the establishment of the critical fact, or whether it was instead corroborated and cumulative." <u>Id.</u> (internal citation, quotation marks, ellipsis and brackets omitted). This is a difficult standard to meet in any case, and particularly hard in this one.

Because of my view that the two statements challenged on appeal were not improperly admitted in any event, I need not go much further than the uncontested portion of Cox's testimony to conclude that the Appellate Division's conclusion that any error was harmless easily withstands analysis under Brecht.  It was Cox who testified that she heard shooting.  It was Cox who testified that there were bullet holes in her car.  And it was Cox who testified that when she confronted petitioner, he admitted to the shooting and asked her not to go to the police.  None of this testimony was objectionable or objected to, and it was highly probative; the jury, if it believed Cox alone, was very likely to convict petitioner.

And while it is true that the context of Cox's remarks (by her references to unidentified persons) marginally increased the credibility of her unobjectionable testimony, there was abundant other evidence that there were, in fact, bullet holes in her car, and that petitioner, in line with his admission to her, was the shooter.  In addition to Cox, there was a witness, Jeffrey Green, who knew petitioner for years and testified that he had observed petitioner and his brother with guns in their hands.  And there was yet another witness, James Little, who also knew petitioner for years and testified that he saw petitioner shooting the gun.

In short, one eyewitness saw petitioner with a gun in his hand moments before the shooting; another eyewitness saw him shooting; and a third witness testified that petitioner had admitted the shooting to her and asked her not to call the police.  All of them knew petitioner personally.  In light of this evidence, even if the background of Cox's statements was erroneously admitted hearsay, as the Appellate Division found, the Appellate Division's conclusion that it was harmless does not warrant relief under Brecht.

## II. Prosecutor's Impeachment of Prosecution Witness

Green, who was a witness for the prosecution, had previously testified clearly before the grand jury that he saw petitioner firing a gun, specifically, that petitioner "started firing off shots . . . [t]owards Lewis Avenue and Kosciusko," and that it was "eight to ten shots . . . coming from the muzzle of the gun." Green also testified before the grand jury that there were other people present when he saw petitioner firing his gun.

At trial, however, Green testified that while he remembered petitioner holding a gun – although, even as to that, he "wasn't sure . . . [it] look[ed] like a gun" – he did not see petitioner do anything with the gun except "wave[] it." Before the prosecutor could bring out his grand jury testimony, Green interjected that in the era surrounding the incident, he was "drinking, smoking and doing drugs," that he was "trying to remember," but that he couldn't "really point and say he shoot the gun [sic] or this guy here shot the gun." The prosecutor then read Green his questions and answers before the grand jury, and asked Green if he remembered giving that testimony. Green testified that he remembered some of the questions but not his answers before the grand jury, although he did remember that, while the shooting was going on, there were people outside, and that he was diving for cover.

Defense counsel objected to the testimony on the ground that the prosecutor was impeaching his own witness. The prosecutor responded that he was not impeaching the witness, but was attempting to refresh his recollection in light of his professed substance-induced and time-induced inability to recall the specifics to which he had testified at the grand jury. The Appellate Division held that "[i]t was improper for the trial court to permit the People to impeach their own witness since his testimony did not tend to disprove a material issue of the case," but that the error was "harmless because there was overwhelming evidence of the defendant's guilt,

and no significant probability that the jury would have acquitted the defendant had it not been for the error." Dunston, 100 A.D.3d at 770, 953 N.Y.S.2d at 662 (citations omitted).

Under New York law, the circumstances under which a trial attorney can impeach his own witness are circumscribed by statute, N.Y. Crim. Pro. L. § 60.35. Whether a state court has properly applied that statute, however, or whether its violation constitutes harmless error, are not issues that are reviewable on federal habeas corpus, because state law gives a defendant greater protection than the federal Constitution. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S. Ct. 475, 480 (1991); see also Mosby v. O'Meara, No. 12-cv-1543, 2015 WL 4871803, at *6 (N.D.N.Y. Aug. 13, 2015) ("[T]o the extent that New York state law provides greater protection than federal constitutional requirements, it defines state law only, and any misapplication of that state law is not cognizable on federal habeas review.").

The U.S. Constitution places no restrictions on a prosecutor's ability to impeach his own witness. Indeed, the Federal Rules of Evidence and therefore, by implication, the U.S. Constitution, expressly permit such impeachment. See Fed. R. Evid. 607 ("Any party, including the party that called the witness, may attack the witness's credibility."). As one court has explained it in the habeas corpus context:

> Petitioner's impeachment claim is not cognizable on federal habeas review. Federal habeas courts may only review claims arising under federal law or the United States Constitution. Even if Hobbs's examination of Lemekia violated Criminal Procedure Law § 60.35, such a violation would not implicate Petitioner's constitutional rights.
>
> Neither the Supreme Court nor the Second Circuit has held that a prosecutor's impeachment of her own witness may violate a criminal defendant's due process rights, and such impeachment is freely permitted under the Federal Rules of Evidence. See Fed. R. Evid. 607. Since Petitioner's claim raises, at most, a violation of state law, the claim lacks merit and should be dismissed.

Escobar v. Senkowski, No. 02-civ-8066, 2005 WL 1307939, at *12-13 (S.D.N.Y. May 26, 2005) (Report and Recommendation) (citations omitted); accord, Arthur v. Beaver, No. 03-cv-4555, 2004 WL 2287773, at *4-5 (E.D.N.Y. Oct. 8, 2004).

Notably, petitioner's argument to the Appellate Division contained no reference to any federal or constitutional basis for the argument. That is because there wasn't any. I therefore reject petitioner's challenge to the ruling of the Appellate Division.

## III. Insufficient Evidence

In his habeas corpus petition, petitioner asserts that his convictions for first degree reckless endangerment and second and third degree criminal possession of a weapon were not supported by sufficient evidence.[1] On direct appeal, petitioner's counsel pointed to one failing in the prosecution's evidence – that each of these claims required proof that some person was in the line of petitioner's fire, and that there was no such proof. Petitioner argued that, at most, the prosecution had "proved no more than the defendant had a firearm and discharged it, striking and damaging an automobile. There was absolutely no proof that anyone was endangered or intended to be physically harmed, respectively elements of the Reckless Endangerment and one of the elevated weapons counts." The Appellate Division held that petitioner "failed to preserve [his legal insufficiency claim] for appellate review" but that "[i]n any event, viewing the evidence in the light most favorable to the prosecution," the evidence was sufficient. Dunston, 100 A.D.3d at 769, 953 N.Y.S.2d at 661.

The reason the Appellate Division held that petitioner's legal insufficiency claim on appeal was unpreserved was because trial counsel had advanced a different legal insufficiency

[1] Petitioner simultaneously argues that the verdict on those counts was against the weight of the evidence. But that claim is not cognizable on federal habeas corpus because it raises only a state law issue, see, e.g., Scission v. Lempke, 784 F. Supp. 2d 237, 243 (W.D.N.Y. 2011), and thus I cannot consider it.

claim than that which petitioner's counsel advanced on appeal. Instead of contending that there was an absence of proof that any person had been endangered by petitioner's shooting, trial counsel had argued that there was no evidence that petitioner had ever fired the gun, arguing, instead, that the evidence showed at most that he had waved it around. The trial court was thus never presented with the need and opportunity to determine whether a jury could reasonably determine if petitioner fired the weapon in a manner that put anyone in danger. And yet it was this "endangerment" argument that petitioner presented before the Appellate Division.

A federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is independent of the federal question and adequate to support the judgment." Lee v. Kemna, 534 U.S. 362, 375, 122 S. Ct. 877, 885 (2002) (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991)). When a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar may constitute an adequate and independent ground for the state court's decision. See, e.g., Coleman, 501 U.S. at 729-30, 111 S. Ct. at 2554; Murden v. Artuz, 497 F.3d 178, 191 (2d Cir. 2007). State procedural grounds are only adequate to support the judgment and foreclose federal review if they are "firmly established and regularly followed" in the state. Lee, 534 U.S. at 376, 122 S. Ct. at 885 (quoting James v. Kentucky, 466 U.S. 341, 348, 104 S. Ct. 1830, 1835 (1984)). If a state court rejects a specific claim on an adequate and independent state law ground, then a federal court should not review the merits of the claim, even if the state court addressed the merits of the claim in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n. 10, 109 S. Ct. 1038, 1044 n. 10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state

holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").

It is well established under New York law that a general objection at the close of the prosecution's case, not stating specific grounds, will not preserve a claim that the evidence fails to prove a particular element of the crime. See N.Y. Crim. Proc. L. § 470.05(2); Garvey v. Duncan, 485 F.3d 709, 714 (2d. Cir. 2007) (general objection not sufficient because, as "New York's highest courts uniformly instruct," to preserve a claim, a defendant must "specifically focus on the alleged error") (collecting state court authority).

At first blush, the instant case might well be seen as escaping from the New York rule holding that general objections alleging legal insufficiency are inadequate to preserve specific claims of insufficiency. The typically insufficient "general objection" is something like, "the People have failed to prove the elements of the crime." That was not the objection here. Trial counsel advanced a particular theory – that the evidence was insufficient to show that petitioner had done anything other than display or brandish the gun. There's nothing general about that. The question is whether the theory advanced on appeal was so different from the theory at trial that the trial objection suffered from the same deficiency as a general objection – not giving the trial court the initial shot at addressing the issue that was later raised on appeal. See id. at 715 (citing People v. McLane, 256 A.D.2d 10, 682 N.Y.S.2d 24, 25 (1st Dep't 1998), leave to app. denied, 93 N.Y.2d 901, 689 N.Y.S.2d 713 (1999) (table)).

I think the framework for answering that question is whether the theory of legal insufficiency raised on appeal was merely within a subset of the theory of legal insufficiency raised at trial, as opposed to vice versa. If the trial court necessarily, even if implicitly, decided the theory of legal insufficiency that was raised on appeal as part of the trial court's

determination, then the Appellate Division is not being asked to do anything that the trial court has not already done. If the legal theory before the Appellate Division, however, requires consideration of evidence that the trial court did not have to consider in denying the motion, even if the issue before the trial court was subsumed within the argument that the Appellate Division was asked to consider, then the issue has not been preserved.

I conclude that the latter situation obtains here. The trial court theory required a determination of whether there was evidence that petitioner fired the gun, but it was never presented with the need and opportunity to determine whether a jury could reasonably determine if petitioner fired the gun in manner that put anyone in danger. Conversely, the Appellate Division, in addition to determining whether there was sufficient evidence for the jury to find that petitioner had fired the gun, was also asked to go beyond that and determine whether there was sufficient evidence for the jury to find that any member of the public had been endangered by the gun's discharge. Because that theory was broader than the one presented to the trial court, the Appellate Division applied firmly established and regularly followed New York law in holding that the point was unpreserved.

Once it is determined that a claim is procedurally barred under state procedural rules, a federal court may still review that claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 111 S. Ct. 2546 (1991); Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038 (1989). The latter avenue, a miscarriage of justice, is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. See Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639 (1986).

The first avenue, cause for the default and prejudice therefrom, can be demonstrated with "a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that 'some interference by state officials' made compliance impracticable . . . [or that] the procedural default is the result of ineffective assistance of counsel." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (citing Murray, 477 U.S. at 488, 106 S. Ct. at 2645). However, if a petitioner relies on ineffective assistance of counsel, that claim must itself have been exhausted in the state court. See Edwards v. Carpenter, 529 U.S. 446, 120 S. Ct. 1587 (2000). To adequately exhaust a claim, a petitioner must have "fairly presented" the claim to the state court. Daye v. Attorney Gen., 696 F.2d 186, 191 (2d Cir. 1982) (en banc).

Petitioner cannot demonstrate cause and prejudice or a miscarriage of justice. Although, as described below, he claimed that his trial counsel was ineffective, he never asserted a claim that his trial counsel was ineffective for not making a broader insufficiency motion. Moreover, in light of the extensive evidence against him, there is no manifest injustice in declining to review this procedurally barred claim.

## IV. Prosecutorial Misconduct

The petition is not entirely clear as to the specific prosecutorial misconduct that petitioner claims deprived him of due process of law. Giving petitioner's claim its broadest construction, however, I will assume that he is alleging the same misconduct as he did in the Appellate Division, as the petition here at least alludes to a subset of the arguments raised there. Each of these acts is set forth below.

### A. Presenting "False" Testimony

Petitioner's point requires drawing certain inferences of impropriety from the testimony of several of the prosecution's witnesses, which consisted of perfectly proper questions and answers. Thus, the transcript reflects that, when examining Cox, the prosecutor asked her how long she had lived on the block when the incident occurred, to which she responded thirty-five years. He then asked her how long she had known petitioner, to which she answered "about fifteen years" (which she amended on cross-examination to thirteen years). A bit later in her direct testimony, the prosecutor asked her whether she had occasion to see petitioner, to which she answered "basically every day, every other day." On cross-examination, defense counsel asked if it wasn't true that petitioner had not lived on the block until 2005 (the incident happened in 2008), to which Cox answered that she didn't know where he lived, just how long she had known him: "That is what you asked me, how long had I been knowing him, and I told you fifteen years. I even mentioned to you that I didn't even know whether he lived on the block or not."

Similarly, Cox's husband was asked how long he knew petitioner, and he replied, "fifteen years." On cross-examination, when asked if petitioner lived in his father's house, Mr. Cox testified, "I don't know if he lived there. He was backwards and forwards there. I can't say he slept there, but he lived with his father off and on." Another witness, Little, when asked how long he knew petitioner, testified "ten years," about as long as he had known petitioner's father.

Based on this testimony, but well after it all came in without objection, trial counsel moved for a mistrial. Her argument was that the prosecution had introduced "false evidence," consisting of the testimony described above. The testimony was "false," she contended, because the prosecutor knew that petitioner had been in jail from 1992 to 2005, yet the witnesses implied

that they had seen him throughout the years in which he had been incarcerated. She was not, of course, suggesting that the prosecutor should have brought out petitioner's prior imprisonment; indeed, the trial court had previously granted her <u>Sandoval</u> motion[2] to preclude bringing out petitioner's prior conviction. Rather, she appears to have been contending that the prosecutor should have found a way to frame his questions so that it was clear that the witnesses had only regularly seen petitioner since 2005 and before 1992. As an alternative to her mistrial motion, she requested a curative instruction advising the jury that petitioner had not lived in the community until 2005.

The trial court noted that by making this motion, trial counsel had come dangerously close to reopening the door to the <u>Sandoval</u> issue and allowing the prosecutor to establish that petitioner was not in the community until 2005 because he had been in jail. Nevertheless, the trial court adhered to its <u>Sandoval</u> ruling, and denied petitioner's motion for a mistrial or curative instruction. It found nothing false about the testimony because no witness had testified that they had seen petitioner in the neighborhood while he was, in fact, in jail; they had testified merely that they had known him for specified periods of years, and just because he had been in jail for some portion of those periods did not mean that they had "stopped" knowing him.

### B. Laughing at Adversary

The transcript discloses that, during defense counsel's cross-examination of Green, the trial court cut off a question mid-way by saying "objection sustained," although no objection had yet been made. Defense counsel then said to the prosecutor, "Excuse me, Mr. James, am I funny?" The trial court admonished both counsel, and urged them to act professionally. I will

---

[2] In <u>People v. Sandoval</u>, 34 N.Y.2d 371 (1974), the New York Court of Appeals held that trial courts must make pre-trial determinations of the extent to which a defendant, should he testify, will be subject to impeachment by cross-examination about prior crimes or bad acts.

assume from this exchange that the prosecutor made some kind of derisive facial expression or sound which petitioner characterized to the Appellate Division as a laugh or chuckle. Nevertheless, defense counsel made no objection to it. In addition, petitioner conceded to the Appellate Division that "this incident was harmless," except when combined with the other alleged instances of misconduct.

### C. Ascribing Fear of Petitioner to a Witness Without Foundation

Green (discussed above) was a reluctant witness, to say the least. The trial court had to issue a material witness order to get him to court, and he had to be escorted by detectives. As noted above, he suffered a memory loss during direct testimony as to the incident when compared to his very specific recollection before the grand jury. He was, however, impeached with his grand jury testimony, and with additional testimony from a detective who testified that Green had told him that he (Green) had seen petitioner shooting during the incident. During this hostile direct testimony, the prosecutor sought to show that Green's memory loss was due either to fear or a desire not to be a "snitch." Green, however, expressly denied any fear, stated that he did not know what a snitch was, and that he was doing his best to tell the truth.

During summation, the prosecutor argued that Green's denial of memory and his purported lack of knowledge as to the meaning of the word "snitch" were not credible in light of his grand jury testimony and his statement to the detective. Although trial counsel made various objections throughout the prosecutor's discussion of Green's testimony, no objection was made to the attack on his credibility. On direct appeal, petitioner characterized this aspect of the prosecutor's summation as contending that Green had refused to remember because he was in fear of petitioner when there was no evidence to support that.

The Appellate Division held that the claim of prosecutorial misconduct was "unpreserved for appellate review" and "[i]n any event, the challenged remarks were not so prejudicial as to constitute reversible error." Dunston, 100 A.D.3d at 770, 953 N.Y.S.2d at 662.

### D. Analysis

As discussed above, a federal court should not address the merits of a petitioner's habeas claim if a state court has rejected the claim on "a state law ground that is *independent* of the federal question raised and *adequate* to support the judgment." Lee v. Kemna, 534 U.S. 362, 375, 122 S. Ct. 877, 885 (2002). It is well-settled that New York's contemporaneous objection rule, codified at N.Y. Crim. Proc. L. § 470.05, is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review. See, e.g., Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011). "A statement that a petitioner's claim was 'unpreserved' is sufficient to establish that [the Appellate Division] was relying on a procedural bar as an independent ground in disposing of the issue." Boyd v. Griffin, No. 11–CV–324, 2014 WL 1797477, at *9 (E.D.N.Y. May 7, 2014). Once again, although petitioner raised a claim of ineffective assistance of trial counsel in his § 440 motion, he did not argue that counsel was ineffective for failing to preserve his claim of prosecutorial misconduct.

There can be no question that the Appellate Division properly found that petitioner's claims of prosecutorial misconduct stemming from the prosecutor's alleged laughing at trial counsel and alleged characterization in summation that Green was in fear of petitioner were unpreserved. The transcript reveals no objection at all by trial counsel. No cause or prejudice, or miscarriage of justice is present that would excuse the procedural bar. Indeed, the record is far from conclusive that the prosecutor laughed at petitioner's trial counsel, or that the prosecutor's summation characterized Green as fearful of petitioner. This may explain not only why no

objection was made at trial, but also why the Appellate Division held in the alternative that these claims were without merit.

The claim that the prosecutor elicited "false testimony" by having his witnesses misstate the amount of time they had seen petitioner in the neighborhood stands on slightly different footing. The District Attorney did not argue on direct appeal that the "false testimony" claim was unpreserved, perhaps because it was the subject of a motion for a mistrial by trial counsel. However, the Appellate Division may have been relying on the fact that, when the prosecutor elicited the allegedly false testimony, defense counsel had made no objection to any of it. The motion for a mistrial came well after the most of this testimony had been received without objection, and some of the testimony that was attacked on appeal was received, again without objection, after the trial court had denied the mistrial motion.

There are occasional "exceptional case[s]," in which the "'exorbitant application of a generally sound rule renders the state ground inadequate' and will not prevent a federal court's consideration of the federal question presented." Fulton v. Graham, 802 F.3d 257, 262 (2d Cir. 2015) (quoting Lee, 534 U.S. at 376, 122 S. Ct. at 885); see also Cotto v. Herbert, 331 F.3d 217 (2d Cir. 2003). This is not one of those exceptional cases. If the testimony was indeed false, because the prosecutor knew that petitioner was in jail when the witnesses were allegedly saying that they had seen him in the neighborhood during a period in which he was incarcerated (which, as noted above, requires a strained reading of the testimony), petitioner had an obligation to object when the testimony came in so that the trial court, if appropriate, could strike it or instruct on it. See Garvey 485 F.3d at 715.

There is therefore no basis for this Court to review this procedurally barred point of error.

## V. Preclusion of Petitioner's Mother as Witness

This point follows from petitioner's claim that the prosecutor deceived the jury into believing that the witnesses linking him to the crimes had seen him during the 15 years he was in jail. To counter that alleged deception, petitioner proffered his mother as a witness, representing that she would testify that he only started living in an apartment in the area three years prior to the shooting. The prosecutor objected on relevance grounds, maintaining that he had not misled the jury, as the witnesses merely testified that they had known petitioner for 15 years, not that they had seen petitioner during the time he was incarcerated. The trial court agreed that the jury had not been misled because none of the witnesses had testified that they had seen petitioner in the neighborhood during the period in which he was in jail, and it therefore excluded the mother's proffered testimony as irrelevant. Moreover, trial counsel was permitted to call another witness who confirmed that he had not seen petitioner in the area before 2005. The Appellate Division held that "the trial court providently exercised its discretion in precluding the witness from testifying in view of the collateral nature of the prospective testimony." Dunston, 100 A.D.3d at 770, 953 N.Y.S.2d at 662.

Because the Appellate Division decided this point on the merits, its decision attracts the provisions of 28 U.S.C. § 2254(d)(1). That statute requires petitioner to demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (internal quotation marks omitted). A state court decision involves "an

unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1439 (2005). The Supreme Court has made clear that the Antiterrorism and Effective Death Penalty Act ("AEDPA") standard of review is extremely narrow, and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal[.]" Ryan v. Gonzales, __ U.S. ___, 133 S. Ct. 696, 708 (2013). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 88, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004)). Since Harrington, the Supreme Court has repeatedly admonished Circuit Courts for not affording sufficient deference to state court determinations. See, e.g., White v. Wheeler, 577 U.S. ___, 136 S. Ct. 456, 460 (2015) (quoting Burt v. Titlow, 571 U. S. ___, __, 134 S. Ct. 10, 16 (2013)) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" ).

Not only must petitioner thread his way through this needle's eye for relief, but a federal court's habeas review is further limited where a petitioner claims that a state court's evidentiary ruling involved an error of constitutional magnitude. See Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 479 (federal habeas corpus relief does not lie for errors of state law.). To determine whether the exclusion of evidence improperly infringed on a petitioner's right to present a complete defense, reviewing courts analyze: (1) whether the trial court's evidentiary ruling was proper; and (2) whether the excluded evidence was material. See Wade v. Mantello,

333 F.3d 51, 58–59 (2d Cir. 2003). Erroneously excluded evidence only reaches a level of unfairness if it "creates a reasonable doubt that did not otherwise exist." Jones v. Stinson, 229 F.3d 112, 120 (2d Cir. 2000) (quoting United States v. Agurs, 427 U.S. 97, 112, 96 S. Ct. 2392, 2402 (1976)); see also Sims v. Stinson, 101 F. Supp. 2d 187, 194 (S.D.N.Y. 2000) (for an evidentiary error to reach constitutional magnitude, "it must have been 'crucial, critical, highly significant'") (quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985)). Therefore, a petitioner seeking habeas relief on the basis of an allegedly erroneous evidentiary ruling must establish that the trial court's error "deprived [him] of a fundamentally fair trial." Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004) (quoting Rosario v. Kuhlman, 839 F.2d 918, 925 (2d Cir. 1988)). Moreover, a federal habeas court reviews the evidentiary error "objectively in light of the entire record before the jury." Collins, 755 F.2d at 19.

Petitioner's argument comes nowhere near to meeting this demanding standard. First, as noted above, there was nothing for petitioner's mother to contradict; the witnesses had not testified that they saw petitioner while he was in jail, only that they knew petitioner for a long time which, undisclosed to the jury, happened to span the period in which he was in jail. Second, another witness testified that petitioner had been in the neighborhood since 2005, which is the same point he proffered his mother to make. Third, and perhaps most importantly, the point of this testimony from each of the prosecution's witnesses was to show they knew petitioner for years, and thus would not misidentify him. Whether those years were the years since 2005, or before 1992 *and* since 2005, but not between them, could hardly be less material on the issue for which the questions had been asked, i.e., to prove a basis for identification. Moreover, it could hardly be less material as a measure of due process. The Appellate Division's rejection of

petitioner's argument is far from being contrary to or an unreasonable application of Supreme Court precedent.

## VI. Defective Jury Charge

On direct appeal, petitioner raised two issues with regard to the jury charge. First, he requested an instruction to the effect that Green's admitted use of intoxicants was a factor that the jury could consider in evaluating his credibility; the trial court rejected the charge. Second, the trial court read the standard charge on interested witnesses, which included the sentence: "A defendant who testifies is a person who had an interest in the outcome of the case," when, in fact, petitioner had not testified. Trial counsel did not object to that sentence. As to the rejected charge, the Appellate Division held that the claim had "no merit" because "[t]he general credibility instruction given by the trial court was sufficient." Dunston, 100 A.D.3d at 770, 953 N.Y.S.2d at 662. As to the superfluous sentence in the interested witness charge, the Appellate Division held that the claim was "unpreserved for appellate review and, in any event, without merit." Id.[3]

As to the second issue, the claim is procedurally barred from review on federal habeas corpus. There was no objection to the superfluous language about how to evaluate a defendant's testimony. There is no cause or prejudice to relieve petitioner of the failure to object; the sentence was not needed, but in no way harmful. It would be absurd to speculate that the verdict would have been different without that language. For the same reason, there is no miscarriage of justice by having included it.

---

[3] The Appellate Division referred to this claim generically as petitioner's "remaining contention." It had disposed of each of his other claims by express reference and thus its reference to petitioner's "remaining contention" had to refer to this claim.

As to the refusal to instruct on the effect of Green's substance abuse on his credibility, petitioner faces a doubly-difficult standard of review. First, as noted above, petitioner must show that the Appellate Division's decision was contrary to, or an unreasonable application of, Supreme Court authority. See 28 U.S.C. § 2254(d). Second, the review of alleged errors in jury instructions is circumscribed. Before a federal court may overturn a conviction due to allegedly erroneous jury instructions, "it must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146, 94 S. Ct. 396, 400 (1973) (internal quotation omitted).

Additionally, the Supreme Court has observed that "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730, 1736 (1977) (footnote omitted). The appropriate inquiry is not whether the trial court gave a faulty instruction, but rather "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp, 414 U.S. at 147, 94 S. Ct. at 400. A party who claims he is entitled to federal habeas relief because of a failure to give a particular jury instruction thus faces a significant hurdle. As the Second Circuit has observed: "The Supreme Court has made it clear that errors in instructions to the jury rarely rise to a constitutional level." Victory v. Bombard. 570 F.2d 66, 69 n. 3 (2d Cir. 1978).

Petitioner fails to establish either element of the standard applicable to this claim. It suffices to note that there is no Supreme Court case holding that, as a matter of due process, juries must be instructed on the possible impact of intoxication in evaluating the testimony of a

witness who admits substance abuse during the period in question.  Nor is there any other authority mandating such an instruction as a matter of due process.  The jury instruction that the trial court gave was the standard instruction identifying the criteria by which jurors may judge the credibility of witnesses; the fact that defense counsel may argue that a witness should not be believed because he engaged in substance abuse (which, in fact, she chose not to do) does not mean the trial court had to instruct on it.  There was no defect at all in the charge, let alone one that violated due process.

## VII.  Ineffective Assistance of Trial and Appellate Counsel

### A. Background

Prior to petitioner's trial, his trial counsel made two motions at different times for dismissal of the indictment based on the prosecutor's alleged failure to bring the case to trial within the time allowed under New York law.  Under the New York speedy trial statute, the prosecutor must declare the case trial ready within six months of the indictment of a felony case, see N.Y. Crim. Pro. L. § 30.30(1)(a), but the statute contains exemptions that exclude time from this period.  A motions court performed a mathematical computation of the calendar and proceedings in the case and, in a four page opinion, found that only 174 days, less than the six month period, were chargeable to the prosecutor.  It therefore denied the motion.

Petitioner's trial counsel attempted to renew the motion prior to sentencing.  The trial court, on the day of sentencing, ruled orally that the attempt to renew the motion was untimely and denied it on that basis.  It then proceeded to sentence petitioner.

After the Appellate Division affirmed his conviction, petitioner brought a *pro se* motion under N.Y. Crim. Pro. L. § 440.10, seeking to vacate his conviction on the ground that his trial

counsel was ineffective for not having timely renewed the speedy trial motion. The trial court

(by the same Justice who had tried the case), found that the claim was "procedurally barred . . .

as it is based upon facts contained in the record." The trial court held that petitioner's "failure to

raise this claim on his direct appeal precludes him, from now, raising this claim" in a § 440.10

motion. In addition, the trial court held that the claim was meritless, as petitioner "failed to

establish that his counsel committed an error when she did not timely renew the [N.Y. Crim. Pro.

L.] [§] 30.30 motion," under either the standard for ineffective assistance of counsel for state or

federal law.

Petitioner then brought a *coram nobis* motion in the Appellate Division, contending that

his appellate counsel was constitutionally ineffective for failing to raise his trial counsel's

alleged ineffectiveness. As part of his *coram nobis* motion, petitioner annexed a letter that he

had received from his appellate counsel before the brief on direct appeal was filed, in which

appellate counsel had discussed his unwillingness to include the issue in the appellate brief.

Among other things, he stated:

> As I have told you earlier, the speedy trial issues were an enormous waste of time.
> I worked a point on denial of speedy trial but it just did not stand up to any
> analysis. I also think it should be left out for strategic reasons, i.e., not cluttering
> better arguments with what comes out to be, in my estimation, a false calculation.
> The internal memos of the Legal Aid Society confirm my view.
>
> That doesn't make me right. It is my opinion, and you are free to disagree with it.
> The view of your trial lawyer was that the DA was forum shopping and the
> attendant delays exceeded the six month readiness rule. Her supervisors disagreed
> and tried to show her that the law was contrary to her hopes. If you are still in
> love with the idea of arguing a speedy trial point even though I think the argument
> is frivolous, the remedy is for you to prepare your own argument on that point.
> That happens often, though quite rarely with briefs I have written.
>
> The procedure is for you to write to the Appellate Division and request
> permission to file a supplementary brief. Permission will be granted and the
> appeal will be held in suspense awaiting your submission. I could and would
> send you all the papers relevant to the issue, including the motions submitted and

denied, the responses, the rulings on both motions, and the internal Legal Aid papers which cover the significant cases that led Legal Aid to believe the issue was a waste of time. Your file has most of the calendar calls.

If that is what you want to do, just let me know and I will send you a box of papers and guide your efforts.

I did not give up on speedy trial lightly – both you and your mother thought the issue was a strong one – but try as I did I could not put together any kind of sensible point. Maybe you can do it.

When the District Attorney responded to the *coram nobis* motion, his submission included an affirmation from petitioner's appellate counsel, essentially reiterating the position that he had taken in his letter, and explaining in more detail why he believed that the speedy trial claim was without any merit. The affidavit noted his strategic determination that including a frivolous claim could distract the Appellate Division from claims that had more merit, and that renewing the speedy trial claim would have delayed the trial, and given the prosecution an opportunity to secure witnesses who were thought to be unavailable for trial. He also was strongly of the view that petitioner's trial counsel had simply been wrong about the excludable time, and pointed out that trial counsel's superiors at Legal Aid, in memoranda, had agreed with him. He concluded that "I was personally certain, based on my experience [which was set forth, and was considerable] . . . that any argument that she provided ineffective assistance of counsel was doomed, and that such an argument damages our chances of success."

The Appellate Division summarily denied petitioner's motion for a writ of *coram nobis*. People v. Dunston, 130 A.D.3d 1061, 13 N.Y.S.3d 834 (2d Dep't) (mem.), leave to app. denied, 26 N.Y.3d 1087, 23 N.Y.S.3d 644 (2015) (table).

**B. Analysis**

As to his claim for ineffective assistance of trial counsel, this Court's review is procedurally barred, just as was the § 440 court's review. New York statutory and case law establishes that where a claim of ineffective assistance of counsel is based on errors or omissions that appear on the record, such claims must be raised on direct appeal or they will be deemed procedurally barred when raised collaterally. See, e.g., N.Y. Crim. Pro. L. § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when . . . [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure . . . ."); People v. Jossiah, 2 A.D.3d 877, 769 N.Y.S.2d 743 (2d Dep't 2003); see also People v. Cooks, 67 N.Y.2d 100, 500 N.Y.S.2d 503 (1986); People v. Hernandez, 191 A.D.2d 511, 594 N.Y.S.2d 791 (2d Dep't 1993). And federal law is equally well settled that the procedural bar in this context is an adequate and independent state law ground for the decision that will be recognized on habeas corpus review. See Sweet v. Bennett, 353 F.3d 135, 140–41 (2d Cir. 2003); Acevedo v. Capra, No. 13-CV-5579, 2014 WL 1236763, at *10 (E.D.N.Y. Mar. 25, 2014) ("The Second Circuit has regularly held that a court's denial of a § 440.10 motion on the basis of the movant's failure to raise an issue on direct appeal is an independent and adequate state ground barring federal habeas review."), aff'd, 600 F. App'x 801 (2d Cir. 2015); Collier v. Lee, No. 08–CV–3441, 2011 WL 2297727, at *5 (E.D.N.Y. June 7, 2011). The procedural bar applied by the § 440 court is thus a regularly followed and independent state law ground that must be respected in this Court.

Here, both speedy trial motions and both rulings of the trial court were contained within the record on appeal. Indeed, that is why petitioner and his appellate counsel engaged in their discussion about whether to include the point on direct appeal. Their decision not to do so precluded relief in the § 440 court.

As noted above, however, ineffective assistance of counsel can excuse a procedural default. That brings us, then, to the final point raised in this petition, which is whether petitioner's appellate counsel was constitutionally ineffective for failing to raise on appeal trial counsel's alleged ineffectiveness. In other words, we need to review the Appellate Division's decision on petitioner's motion for *coram nobis* relief on this issue.

Once again, petitioner must overcome a double hurdle. He must not only show patent unreasonableness under AEDPA, but to show a Sixth Amendment violation of effective assistance of appellate counsel, petitioner must meet the two-prong test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984). First, he must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." <u>Id</u>. at 688, 104 S. Ct. at 2064-65. The court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." <u>Cullen v. Pinholster</u>, __ U.S. ___, __, 131 S. Ct. 1388, 1407 (2011) (citation and internal quotation marks omitted). Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 669, 104 S. Ct. at 2055-56. "The likelihood of a different result must be substantial, not just conceivable." <u>Harrington</u>, 562 U.S. at __, 131 S. Ct. at 792.

Petitioner thus must demonstrate not only that his appellate counsel was constitutionally ineffective in making the decision not to raise the point, but that the Appellate Division's decision was contrary to or an unreasonable application of Supreme Court precedent. And once again, he cannot make either showing.

As to whether petitioner's appellate counsel was constitutionally ineffective, this was not a case of a casual or negligent decision not to include the speedy trial issue on appeal. The record shows that appellate counsel carefully considered it, discussed it with petitioner, and made a very deliberate determination that the claim had no merit, and that there was a downside in distracting the Appellate Division with frivolous arguments. Moreover, the record shows that appellate counsel also considered that trial counsel had her own strategic reasons for not timely raising the issue a second time, particularly that the motion itself would have caused an additional delay and thereby offered the prosecution the chance to secure testimony from witnesses who had not been located up to that point. Indeed, appellate counsel was aware, and, in part, relied upon, the fact that petitioner's trial counsel from Legal Aid had been contradicted by her own superiors, who felt there was no merit to the speedy trial claim. Therefore, petitioner cannot show that appellate counsel's performance fell below an objective standard of reasonableness.

For similar reasons, petitioner was not prejudiced by the failure to include the speedy trial issue on appeal. To this day, he has been unable to show that the motion had any merit. The motions court had the discretion under the state statute to determine what a "reasonable" exclusion was under the particular circumstances of the case, and differed with trial counsel over a relatively small amount of time. When she renewed that motion, albeit in an untimely way, she was unable to demonstrate that the motions court had abused its discretion in computing the

exclusion, as it also had carefully considered each event in the case to determine what time was excludable and what time was not.

Considering the above, the Appellate Division's decision to deny *coram nobis* relief was not contrary to or an unreasonable application of Supreme Court precedent. In fact, under any standard of review, the Appellate Division was clearly correct. Thus, there is no basis for federal habeas corpus relief on this issue.

## CONCLUSION

The petition is denied and the case is dismissed. The Clerk is directed to enter judgment accordingly. A certificate of appealability will not issue as the petition fails to raise any substantial issues. The Court certifies pursuant to 28 U.S.C. § 19l5(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917 (1962).

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
    March 28, 2016